IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION


MARIAM BAILEY                                                    PLAINTIFF

V.                                        CIVIL ACTION NO. 3:14-CV-72-SA-JMV

STANLEY ACCESS TECHNOLOGIES, INC., and
DESOTO INNS, INC.                                               DEFENDANTS

MEMORANDUM OPINION

This matter comes before the Court on the Complaint [1] of Mariam Bailey, who seeks

damages for injuries she sustained while a guest at the Hampton Inn hotel owned by Desoto Inns.

Bailey asserts various claims for negligence, gross negligence, *res ipsa loquitur*, and punitive

damages. Each party anticipates having their own expert witness report and testify on their

behalf.

DeSoto Inns filed motions to exclude the testimony of Plaintiff's expert [99] and

Stanley's expert [97]. Desoto Inns also filed a motion to strike two motion memoranda

supplements filed by Plaintiff [142].

Stanley filed motions to exclude the testimony of Plaintiff's expert [106] and DeSoto

Inn's expert [108]. Stanley has also filed a motion to strike a supplemental report by Plaintiff's

expert as untimely [101].

Finally, both Defendants filed separate motions for summary judgment [95, 110].

*Factual and Procedural Background*

On the afternoon of May 3, 2013 Mariam Bailey and her husband checked into the

Hampton Inn hotel in Olive Branch, Mississippi. Plaintiff contends that while walking through

the entryway, the hotel's automatic sliding door prematurely closed, striking her, and causing her to fall to the ground, fracturing her left hip, and sustaining other injuries.

Stanley Access Technologies manufactured and performed service on the automatic doors since their installation in 1998 when the hotel was built. Although DeSoto Inns did not have a maintenance or preventative-maintenance contract with Stanley, Stanley has performed maintenance and service on the doors on an as-needed basis.

The allegations in the Plaintiff's Complaint [1] relate predominately to the Defendants' alleged failure to properly inspect and maintain the automatic sliding doors, to warn of potential danger, and to keep the doors in proper working order. Both Defendants have answered, and substantial discovery has taken place. The Court will first address the motions to strike and the motions to exclude because they affect, at least in part, the summary judgment analysis.

*Motions to Strike*

*Second Supplemental Report of Davis*

Plaintiff submitted a second (supplemental) report by Davis dated June 28, 2015 that is the subject of a motion to strike [101] as untimely. The Court finds that the Report and Recommendations of the United States Magistrate Judge dated September 9, 2015, were on that date duly served upon the parties, more than fourteen days have elapsed since service of said Report and Recommendations, and that no objection was filed or served by any party. The Court is of the opinion that the magistrate judge's Report and Recommendations should be approved and adopted as the opinion of the Court. Therefore, the Report and Recommendations of the United States Magistrate Judge dated September 9, 2015, are hereby approved and adopted as the opinion of the Court. Defendant Stanley Access Technologies, Inc.'s Motion [101] to Strike

Plaintiff's Untimely Supplemental Expert Report is granted, and the supplemental expert report of Dr. Warren Davis is hereby stricken.

*Memoranda Supplements*

On September 8, 2015, Plaintiff filed a supplement [138] to her memorandum in opposition [120] to DeSoto Inn's motion for summary judgment [95][1], and a supplement [139] to her memorandum in opposition [126] to DeSoto Inn's motion to exclude Davis [99][2]. DeSoto Inns filed a motion [142] to strike these two supplements, and Plaintiff did not respond.

Plaintiff submitted these supplements without leave of Court, outside the clearly established deadlines, and in violation of Local Rule 7. *See* L. U. Civ. R 7(b). As a practical matter, Plaintiff filed these supplements after DeSoto Inns' relevant replies had already been filed,[3] leaving no opportunity for DeSoto Inns to reply to the additional information.

In submitting these supplements, Plaintiff represented to the Court that the supplements were merely signed, notarized versions of the unsigned affidavits that were originally submitted [120-28, 126-3]. This is not the case. The Plaintiff's supplements contain nine additional pages of opinions, arguments, and findings by Plaintiff's intended expert witness Warren Davis. For all intents and purposes, these documents are actually supplemental expert reports, containing new opinions by Davis. Discovery closed in this case on March 2, 2015.

*Legal Standard*

Federal Rule of Civil Procedure 26(a)(2)(B) requires parties to serve expert disclosures containing "a complete statement of all opinions the witness will express and the basis and reasons for them . . . ." *See* Fed. R. Civ. P. 26(a)(2)(B); *see also Sierra Club, Lone Star Chapter*

---

[1] Plaintiff's Response was due on August 21, 2015.
[2] Plaintiff's Response was due on August 25, 2015.
[3] DeSoto Inns' replies to Plaintiff's responses to DeSoto Inns' motions for summary judgment and to exclude Davis were filed on August 28, 2015 and September 4, 2015 respectively.

*v. Cedar Point Oil Co.*, 73 F.3d 546, 569 (5th Cir. 1996). The purpose of Rule 26(a)(2) is "to eliminate unfair surprise to the opposing party." *Hill v. Koppers*, No. 3:03CV60, 2009 WL 3246630, at *2 (N.D. Miss. Sept. 30, 2009) (citations and internal quotations omitted).

Federal Rule of Civil Procedure 26(e)(1) provides that parties are under a duty to supplement their disclosures or discovery responses where they learn that a prior response was incomplete or incorrect and the additional corrective information was not otherwise known to the other parties during the discovery process. However, Rule 26(e) only applies to supplementation, not entirely new expert opinions. *See Ovella v. B&C Constr. & Equip., LLC*, No. 1:10CV285, 2011 U.S. Dist. LEXIS 93009, at *4-5 (S.D. Miss. Aug. 5, 2011); *Charles v. Sanchez*, No. EP-13-CV- 00193, 2015 U.S. Dist. LEXIS 22752, at *27 (W.D. Tex. Feb. 24, 2015). "Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony. The purpose of Rule 26(a)(2) is to provide notice to opposing counsel–before the deposition–as to what the expert witness will testify . . . ." *Hill v. Koppers*, 2009 WL 3246630 at *2 (citing *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 642 2 (7th Cir. 2008). *See also Salgado v. General Motors Corp.*, 150 F.3d 735, 741–42, n. 6 (7th Cir. 1998); *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*, 73 F.3d 645, 571 (5th Cir. 1996) ("The purpose of rebuttal and supplementary disclosures is just that–to rebut and to supplement"); *Shelter Mut. Ins. Co. v. Culbertson's Ltd., Inc.*, No. 97-1609, 97-1969, 1999 WL 135297, at *4 (E.D. La. Mar. 11, 1999) (expert report discussing issues not included in initial report cannot be considered "supplementary").

Although the Federal Rules of Civil Procedure provide for supplementation, parties do not have infinite time to supplement their experts' opinions with new information to respond to challenges to their experts' original evidence. Courts have stricken supplemental reports to the

extent they go beyond opinions expressed in the experts' Rule 26 reports. *Avance v. Kerr-McGee Chem. LLC*, No. 5:04-CV-209, 2006 U.S. Dist. LEXIS 87224, at *21 (E.D. Tex. Nov. 30, 2006) (citing *Beasley v. U.S. Welding Svc., Inc.*, 129 Fed. App'x 901, 902 (5th Cir. 2005)). Also pertinent here is Rule 26(a)(5) of the Uniform Local Rules for the Northern and Southern Districts of Mississippi which provides: "A party is under a duty to supplement disclosures at appropriate intervals under Federal Rule of Civil Procedure 26(e) and in no event later than the discovery cut-off established by the case management order." L. U. CIV. R. 26(a)(5). A party who fails to comply with Rule 26 "bears the burden to show that its actions were substantially justified or harmless." *Avance v. Kerr-McGee Chem. LLC*, No. 5:04-CV-209, 2006 U.S. Dist. LEXIS 87224, at *21 (E.D. Tex. Nov. 30, 2006) (excluding late filed report where plaintiffs failed to demonstrate "'substantial justification' why the revisions and new affidavits were filed after the expert deadline . . . ."). Additionally, Federal Rule of Civil Procedure 16(b) "authorizes the district court to control and expedite pretrial discovery through a scheduling order." *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990).

Exclusion of evidence as a means of enforcing a pretrial order pursuant to Rule 16 or imposing sanctions under Rule 37(c)(1) involves consideration of four factors:

> (1) the explanation for the failure to identify the witness[4]
> (2) the importance of the testimony;
> (3) potential prejudice in allowing the testimony; and
> (4) the availability of a continuance to cure such prejudice.

---

[4] Although the *Geiserman* case involved failure to timely designate certain experts, the same analysis is applied to other types of violations of scheduling orders, such as failure to timely reveal the opinions of properly designated experts. See, e.g., *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 379-82 (5th Cir. 1996) (affirming exclusion of expert testimony pursuant to Rules 16 and 37 where experts were timely designated but certain opinions were not timely disclosed); accord *Avance*, 2006 U.S. Dist. LEXIS 87224 at *20-21; *Shelter*, 1999 U.S. Dist. LEXIS 3241 at *4.

*Id.* at 791; *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004); *see also Kmart Corp. v. Kroger Co.*, No. 1:11-CV-00103, 2013 WL 6681614, at *3-4 (N.D. Miss. Dec. 18, 2013).

The first factor is self-explanatory. With respect to the second, importance of the testimony, the Fifth Circuit has stated that "[t]he claimed importance of expert testimony underscores the need for [plaintiff] to have timely designated his expert witness." *Geiserman*, 893 F.2d at 792. *See also Hamburger*, 361 F.3d at 883. The same holds true for new opinions offered by a previously designated witness. *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 381 (5th Cir. 1996). Moreover, the importance of the testimony "cannot singularly override the enforcement of local rules and scheduling orders." *Id.* (internal citation omitted).

As to the third factor, the Fifth Circuit has noted that a delay of even a few weeks in disclosing expert testimony disrupts the court's schedule and the opponent's preparation and, therefore, is prejudicial. *Geiserman*, 893 F.2d at 791; *see also Williams v. Gonzales*, No. 104-CV-342, 2005 WL 3447885, at *6 (E.D. Tex. Dec. 14, 2005) (citing *Geiserman*, 893 F.2d at 791) ("Disruption of the court's discovery schedule and the opponent's preparation constitutes sufficient prejudice to militate in favor of the exclusion of [expert] testimony.").

Finally, the Fifth Circuit has held that while continuances may be possible to allow the other party to address the new testimony, it is within this Court's discretion to exclude such testimony where a continuance could result in additional expense in defending the lawsuit and would not serve to enforce local rules or court imposed scheduling orders. *Id.* at 792; *accord Barrett*, 95 F.3d at 381; *Sierra Club*, 73 F.3d at 573. As the *Hamburger* court noted, just

"[b]ecause of a trial court's need to control its docket, a party's violation of the court's scheduling order should not routinely justify a continuance." *Hamburger*, 361 F.3d at 884.[5]

*Analysis*

Plaintiff has not responded to the instant motion to strike, and offers no explanation or justification for the submission of new opinions more than four months after the close of discovery. The prejudice of allowing such a late disclosure is obvious. DeSoto Inns will now have no opportunity to have its own expert opine on these new subjects. Nor will it be able to discover and depose witnesses relative to the new opinions.

Finally, no party has requested a continuance in this case. However, continuing the case to permit Plaintiff to reopen discovery, to assert new opinions first advanced well after the close of discovery would add substantial expense to the defendant's trial preparation efforts and expenses.

For these reasons, DeSoto Inns' Motion to Strike [142] is granted and the supplemental affidavits of Warren Davis [138-1, 139-1] are stricken.

*Expert Testimony*

The admissibility of expert testimony is governed by *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and the post-*Daubert* amendments to Federal Rule of Evidence 702. *See Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Rule 702 states the following:

---

[5] *See also Williams*, 2005 U.S. Dist. LEXIS 38838 at *17-18 (excluding untimely expert affidavit and holding that the fact "that potential prejudice may be cured by granting a continuance is not dispositive"); *Hill*, 2009 U.S. Dist. LEXIS 98798 at *39-40 (expert testimony was excluded because the plaintiff failed to timely supplement her expert's original report); *Owens v. United States*, No. 5:04cv304-DCB-JCS, 2005 U.S. Dist. LEXIS 43306, at *6 (S.D. Miss. Aug. 23, 2005) (excluding expert reports and stating that "[a] party should not be granted a continuance as an award for his dilatory conduct"); *Robbins v. Ryan's Family Steak Houses East, Inc.*, 223 F.R.D. 448, 454 (S.D. Miss. 2004) (excluding supplemental expert testimony and noting violation of scheduling order should not routinely result in continuance).

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

The purpose of Rule 702 is to guide the district court's gatekeeping function. *Guy,* 394 F.3d at 325. Before allowing a witness to testify as an expert, a court "must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) (quoting FED. R. EVID. 702). Further, the fact that a proposed witness is an expert in one area does not qualify him to testify as an expert in all related areas. *Id*. at 938. Therefore, "[a] district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Id*. at 937.

A court's gatekeeping function also involves ensuring that "the expert uses reliable methods to reach his opinions," and that those opinions are "relevant to the facts of the case." *Guy*, 394 F.3d at 325. "Reliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.' Relevance depends upon 'whether that reasoning or methodology properly can be applied to the facts in issue.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 589, 113 S. Ct. 2786); *see also United States v. Fields*, 483 F.3d 313, 342 (5th Cir. 2007). The party offering

the expert bears the burden of establishing reliability by a preponderance of the evidence. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

In *Daubert*, the Supreme Court described several non-exclusive factors that trial judges should consider in gauging reliability, including whether the proposed technique or theory can be or has been tested, whether it has been subjected to peer review and publication, whether its error rate is acceptable, whether the theory is generally accepted in the scientific community, and whether there are standards controlling the technique. *Guy*, 394 F.3d at 325; *Knight*, 482 F.3d at 351. It later instructed that "the reliability analysis must remain flexible: not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy*, 394 F.3d at 325 (citation omitted); *see also Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007). The Fifth Circuit has quoted with approval the Seventh Circuit's observation that "[u]nder the regime of *Daubert* a district judge asked to admit scientific evidence must determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist." *Moore*, 151 F.3d at 278 (quoting *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996)).

The *Daubert* analysis applies to the process of the expert's conclusions, not the merits of the conclusions themselves. *Guy*, 394 F.3d at 325. The merits remain subject to attack at trial under traditional principles of "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596, 113 S. Ct. 2786. "[I]n determining the admissibility of expert testimony, the district court should approach its task 'with proper deference to the jury's role as the arbiter of disputes between conflicting opinions.'" *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., State of Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir.

1987)). As a general rule, "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Id.*

A. *Plaintiff's Expert Warren Davis*

    1. *DeSoto Inns' Motion to Exclude Warren Davis – Expert for Plaintiff*

Plaintiff has designated Warren Davis as their expert witness in this case to testify about the use of inspections to detect problems with automatic doors, the engineering principles involved in automatic door sensors, and relevant industry standards. Davis has a Ph.D. in physics from the Massachusetts Institute of Technology and a significant background in science. A substantial portion of Davis' knowledge and experience specific to automatic doors comes from his work as a professional expert witness for approximately twenty years. According to Davis, he also holds two patents related to automatic doors and has contributed to the development of industry standards for automatic doors.

"Whether a witness is qualified to testify as an expert is left to the sound discretion of the trial judge, who is in the best position to determine both the claimed expertise of the witness and the helpfulness of his testimony." *Elliot v. Amadas Indus., Inc.*, 796 F. Supp. 2d 796, 805 (S.D. Miss. 2011) (quoting *Sullivan v. Rowan Cos.*, 952 F.2d 141, 144 (5th Cir. 1992)). An expert is not *per se* unqualified just because they are a professional witness. *Spansel v. State Farm Fire & Cas. Co.*, No. 1:08-CV-1516, 2010 WL 415264, at *5 (S.D. Miss. Jan. 27, 2010). Status as a professional witness "goes to bias only, and thus to the weight and credibility of his testimony." *Id.* If his testimony is to be rejected on this basis, "it is for the jury to do so, not the Court." *Id.*

For purposes of summary judgment, and considering Davis' experience specifically related to automatic door sensors and the industry, as well as his science background, the Court

finds that Davis is qualified to testify about the use of inspections to detect problems with automatic doors, the engineering principles involved in automatic door sensors, and relevant industry standards.

Desoto Inns argues that Davis' report and testimony should be excluded to the extent he asserts that: had DeSoto Inns performed daily safety inspections on the subject automatic sliding doors, any problems would have been discovered, thus preventing the Plaintiff's injuries. According to Davis' expert report dated October 30, 2015[6], this is an opinion he is likely to offer at trial.

DeSoto Inns' argument implicates two distinct opinions by Davis. The first involves the functioning of the doors and the effectiveness of daily inspections more generally. The second encompasses causation, specifically that the failure to perform inspections caused the Plaintiff's injuries.

Under Rule 702, the first question the Court must answer is do Davis' opinions qualify as "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702(a). Expert testimony is not necessary to inform the jury about affairs "within the understanding of the average [person]." *Elliot*, 796 F. Supp. 2d at 805; *United States v. Moore*, 997 F.2d 55, 57 (5th Cir. 1993) (quoting *United States v. Webb*, 625 F.2d 709, 711 (5th Cir. 1980)). While Davis' opinions have their origins in technical knowledge, he leaves the area of technical knowledge when he opines about causation, and the prevention of Plaintiff's injuries. Specifically, Davis' testimony about the scope, methodology, and effectiveness of daily inspections may assist the trier of fact to understand the evidence in this case. FED. R. EVID. 702(a). However, whether the failure to perform the

_____

[6] As outlined above, Davis' second (supplemental) report by dated June 28, 2015 is stricken and will not be considered by the Court.

inspections ultimately caused the Plaintiff's injuries is a question for the jury. *Thomas v. Great Atl. & Pac. Tea Co.*, 233 F.3d 326, 329-30 (5th Cir. 2000) (holding "the issue of proximate or contributing causation is likewise one for the trier of fact").

Further, Davis' opinion about causation embraces an ultimate issue in the case, and goes to the heart of Plaintiff's negligence claim against DeSoto Inns. Federal Rule of Evidence 704 abolished the per se rule against testimony regarding ultimate issues of fact. *United States v. Grote*, 632 F.2d 387, 390 (5th Cir. 1980), cert. denied, 454 U.S. 819, 102 S. Ct. 98, 70 L. Ed. 2d 88 (1981); *United States v. Miller*, 600 F.2d 498, 500 (5th Cir. 1979), cert. denied, 444 U.S. 955, 100 S. Ct. 434, 62 L. Ed. 2d 327 (1979). The rule provides that "an opinion is not objectionable just because it embraces an ultimate issue." FED. R. EVID. 704. However, Rule 704 does not require the automatic admission of all opinions either. The notes to the rule promulgated by the Advisory Committee make it clear that questions and opinions that allow the witness to instruct the jury as to what result to reach are not permitted. *Id.* "Nor is the rule intended to allow a witness to give legal conclusions." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983); *see also: United States v. Fogg*, 652 F.2d 551, 557 (5th Cir. 1981), cert. denied, 456 U.S. 905, 102 S. Ct. 1751, 72 L. Ed. 2d 162 (1982); *United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977).

In this case, Davis' opinion appears to be specifically tailored to answer the causation question, did DeSoto Inns' failure to inspect cause the Plaintiff's injuries. The causation portion of Davis' opinion is a legal conclusion, and as such is improper subject matter for expert testimony. *See* Restatement (Second) of Torts §§ 328B-C (1965).

For these reasons, DeSoto Inns' motion to exclude the expert testimony of Warren Davis is granted in part and denied in part. Davis' testimony is excluded to the extent it provides a

conclusion to the jury about causation and the definitive causal link between DeSoto Inns' alleged failure to perform daily inspection and the Plaintiff's injuries. At this time, Davis' opinions about the methodology and effectiveness of daily inspections are not excluded.

2. *Stanley Technologies' Motion to Exclude Warren Davis – Expert for Plaintiff*

Defendant Stanley argues that Davis' opinions directed at them should be excluded for similar reasons. However, while Davis' opinions directed at DeSoto Inns involve causation, Davis' opinions directed at Stanley mostly support the Plaintiff's allegation that Stanley owed a duty to the Plaintiff, an allegation that Stanley repeatedly denies. Stanley objects to the admission of all of Davis' opinions that pertain to them.

Davis' opinions numbered two, five, and six in his October 30, 2015 report mostly relate to the way automatic doors like the ones in this case operate. These opinions include several possible explanations for a malfunction or defect offered to explain the cause of the alleged premature closing, and explanations of how automatic door sensors work.

While the average juror is certainly familiar with automatic doors given how many are installed in public places, it is not likely that the average juror is familiar with their more technical aspects, such as how the sensors actually function. *Elliot*, 796 F. Supp. 2d at 805; *Moore*, 997 F.2d at 57. Given the allegation in this case, that the doors prematurely closed on the Plaintiff, Davis' technical knowledge about the door sensors, timing, and closing mechanisms could assist the "trier of fact to understand the evidence." FED. R. EVID. 702 (a).

As discussed above, the bases for Davis' opinions are insufficient to provide a definitive answer to the causation question at issue in this case. However, the bases are sufficient to provide a basis for Davis' opinions about how the doors and sensors function in the technical sense. FED. R. EVID. 702(b); *Daubert*, 509 U.S. at 590, 113 S. Ct. 2786). The Court may admit an

opinion "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject. . ." FED. R. EVID. 703. The Defendants have not presented any evidence or argument that Davis' opinions are based on information not typically relied on by experts in the field.

To the extent that Davis' opinions concern the specifics of the alleged incident involving the Plaintiff, Stanley will have the opportunity at trial to challenge the bases and merits of these opinions. As a general rule, "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Elliot*, 796 F. Supp. 2d at 805 (quoting *Viterbo*, 826 F.2d at 422). The merits remain subject to attack at trial under traditional principles of "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596, 113 S. Ct. 2786.

For these reasons, the Court finds that Davis' opinions numbered two, five, and six in his October 30, 2015 report are not excluded at this time.

Davis' remaining opinions[7] mostly relate to Stanley's professional obligations and the industry standards applicable to automatic doors and door service technicians. Stanley's primary objection to these opinions is that they are inaccurate, especially as applied to the facts in this case. It is important to note that Stanley does not necessarily disagree with the industry standards cited by Davis, but with Davis' application and interpretation of the standards.

The Defendants have not presented any evidence or argument that these opinions are based on information not typically relied on by experts in the field. FED. R. EVID. 703. The *Daubert* analysis "applies to the process of the expert's conclusions, not the merits of the conclusions themselves." *Guy*, 394 F.3d at 325. The merits remain subject to attack at trial under

---

[7] Davis' remaining opinions directed at Stanley are numbered 3, 4, 8, 9, 10, and 14 in his October 30, 2015 report.

traditional principles of "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596 113 S. Ct. 2786. For these reasons, Davis' remaining opinions directed at Stanley are not excluded at this time.

Finally, some portions of Davis' report embraces the ultimate issue of whether Stanley owed a duty to Plaintiff. Consistent with the analysis of Davis' opinion related to DeSoto Inns and causation outlined above, Davis' opinion as to Stanley is excluded to the extent that he seeks to provide a definitive legal conclusion to the jury about Stanley's duty to the Plaintiff.

*B. Stanley Technologies Expert – David Sitter*

Stanley has designated David Sitter as their expert witness in this case. Sitter's report shows that he intends to offer testimony about the effectiveness of daily inspections on automatic doors, and the implications of DeSoto Inns' failure to perform inspections. Sitter is an electrical engineer, and the senior safety assurance manager for Stanley Black & Decker, Inc. Sitter is a member of a number of professional organizations related to the automatic door industry. DeSoto Inns' objection to Sitter's testimony tracks its objection to Davis' analyzed above. Desoto Inns argues that Sitter's report and testimony should be excluded to the extent he asserts that: had DeSoto Inns performed daily safety inspections on the subject automatic sliding doors, any problems would have been discovered, thus preventing the Plaintiff's injuries. According to Sitter's expert report, this is an opinion he is likely to offer at trial.

As with Davis' opinions, Sitter's report implicates the distinct subjects of the effectiveness of inspections, and the causation of the Plaintiff's injuries.

Consistent with the Court's analysis of Davis' testimony, Defendant DeSoto Inns' motion to exclude the expert testimony of Sitter is granted in part and denied in part. Sitter's testimony is excluded to the extent it provides a conclusion to the jury about causation and the definitive

causal link between DeSoto Inns' alleged failure to perform daily inspection and the Plaintiff's injuries. *Owen*, 698 F.2d at 240; *see also: Fogg*, 652 F.2d at 557 (5th Cir. 1981), cert. denied, 456 U.S. 905, 102 S. Ct. 1751; *Milton*, 555 F.2d at 1203. Sitter's opinions about the methodology and effectiveness of daily inspections are not excluded.

*C. DeSoto Inns' Expert - Michael Panish*

Stanley explicitly objects to four opinions of DeSoto Inns' designated expert witness Michael Panish. The four opinions at issue are:

1) that DeSoto Inns did not know they were supposed to perform daily safety checks;
2) that Stanley never informed DeSoto Inns about the need to perform daily safety checks;
3) that when he inspected the subject door eighteen months after the accident the sensor was maladjusted; and
4) that any time Stanley worked on the subject door, Stanley should have performed a thorough investigation to determine that the door was operating properly.

Stanley objects to Panish's first two opinions on the basis that they are improper subjects for expert testimony and invade the province of the jury. Rule 702 states that an expert may testify in the form of an opinion or otherwise if, "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702(a). Panish's first two opinions are not related to any "scientific, technical, or specialized knowledge" that could necessitate the opinion of an expert to "help the trier of fact to understand the evidence or to determine a fact in issue." *Id*. What DeSoto Inns knew or did not know is not a proper subject for expert testimony. Similarly, what Stanley did or did not tell DeSoto Inns is also not a proper subject for expert testimony. The bases of Panish's first two opinions, the depositions of hotel management and employees, demonstrate the fact that the jury does not need an expert to opine further on facts and testimony already before the Court. *See* FED. R. EVID. 701-2(a). Expert testimony "serves to inform the jury about affairs not within

the understanding of the average [person]." *Elliot*, 796 F. Supp. 2d at 805; *Moore*, 997 F.2d at 57 (quoting *Webb*, 625 F.2d at 711). The Court finds that the subject matter of Panish's first two opinions is well within the understanding of the average juror, and that Panish's testimony is likewise unnecessary to establish the bases of these opinions. For these reasons, Stanley's motion to exclude Panish's first two opinions is granted.

Stanley objects to Panish's third opinion arguing that the timing of his inspection, eighteen months after the accident, was too far removed in time to be relevant to Plaintiff's case. DeSoto Inns argues, that the mere fact that an inspection came years after the alleged incident does not render the expert opinion irrelevant. However, while the mere passage of time may not render Panish's testimony irrelevant, changes in the condition of the doors in the time between the alleged incident and the inspection does. It is undisputed that at least some changes were made to the subject doors after the incident and before Panish's inspection.[8]

In *LeBoeuf v. K-Mart Corp.*, the Fifth Circuit upheld a district court's exclusion of expert testimony based on an inspection of a store premises two years after an accident. *LeBoeuf v. K-Mart Corp.*, 888 F.2d 330, 333 (5th Cir. 1989). The District Court based it's exclusion on the fact that the relevant issue before that Court was whether a dangerous condition existed at the time of the accident, not two years later. *Id*. The Court finds, consistent with *LeBoeuf*, that Panish's opinion that the subject door's sensor was maladjusted eighteen months after the incident is not relevant, and may tend to mislead the jury because, "it's what was happening at the time of the accident that counts." *Id*. However, this finding is not a wholesale rejection of all of Panish's opinions derived from his inspection. For these reasons, Stanley's motion to exclude Panish's third opinion is granted.

---

[8] The Court also notes that Panish's inspection and related opinions may raise an issue related to the admissibility of subsequent remedial measures. The Court will not address this issue here, as it has not yet been raised by the parties.

Finally, Stanley argues that Panish's fourth opinion should be excluded under Federal Rule of Evidence 703. However, Stanley has presented no evidence that Panish based his opinion on facts or data on which experts in the field would not typically rely. FED R. EVID. 703. Instead, Stanley argues Panish's fourth opinion is irrelevant because Panish does not opine that Stanley's *actual* service was deficient, only generally that Stanley *should have* performed thorough investigations.

Again, Stanley's objections to Panish's fourth opinion go more to weight than admissibility. *Elliot*, 796 F. Supp. 2d at 805 (quoting *Viterbo*, 826 F.2d at 422). At trial, Stanley will have the opportunity to cross-examine Panish and question the bases of his opinions. "[Q]uestions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Id.* The merits of Panish's opinions remain subject to attack at trial. *Daubert*, 509 U.S. at 596, 113 S. Ct. 2786. For these reasons, Stanley's motion to exclude Panish's fourth opinion is denied.

In summary, Defendant Stanley's motion to exclude the expert testimony of Michael Panish is granted in part and denied in part. Panish's first three opinions above are excluded, and Panish's fourth opinion is admitted.

## D. Conclusion: Motions to Exclude Expert Testimony

This determination by the Court on the admissibility of these opinions is made for purposes of summary judgment. The expert reports contain statements of fact, opinions, and legal conclusions. If trial testimony follows the contours of the reports, some of it will likely be inadmissible, while some will likely be admissible. Therefore, the complete exclusion of any of these witnesses is premature at this point. However, the Court urges the parties to keep the broad

guidelines and specific cases cited above in mind. The Court will not admit expert testimony that amounts to nothing more than mere legal conclusions. When disputed testimony arises at trial, the Court expects the parties to present specific case law to support the admission or exclusion of that particular testimony. The Court will consider objections on a case-by-case basis at trial, and this ruling has no effect on potential motions at trial or after trial concerning damages and sufficiency of the evidence.

*Summary Judgment*

Both Defendants submitted Motions for Summary Judgment [95, 110] arguing that Plaintiff has failed to establish the necessary elements of her claims, and demanding judgment as a matter of law in their favor. The Plaintiff has responded and the Defendants have replied making these issues ripe for review.

*Summary Judgment Standard*

Federal Rule of Civil Procedure 56 governs summary judgment. Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a

genuine issue for trial.'" *Id*. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075. Mississippi substantive law applies in this diversity case. *See Cox v. Wal-Mart Stores E., L.P.*, 755 F.3d 231, 233 (5th Cir. 2014) (citing *Wood v. RIH Acquisitions MS II, LLC*, 556 F.3d 274, 275 (5th Cir. 2009)).

*Premises Liability in Mississippi*

The analysis of premises liability claims, like the ones in this case, under Mississippi law requires a determination on three fronts: (1) legal status of the injured person, (2) relevant duty of care, and (3) defendant's compliance with that duty." *Wood*, 556 F.3d at 275 (citing *Massey v. Tingle*, 867 So. 2d 235, 239 (¶12) (Miss. 2004)). In this case, the parties agree the Plaintiff was a business invitee at the relevant times.

A premises owner has a duty of reasonable care, to "maintain its premises in a reasonably safe condition," but a premises owner is "not an insurer of the safety of invitees." *Pigg v. Express Hotel Partners, LLC*, 991 So. 2d 1197, 1199 (¶15) (Miss. 2008); *Wood*, 556 F.3d at 275. This includes a duty to "warn of any dangerous conditions not readily apparent which the owner knew, or should have known, in the exercise of reasonable care, and the duty to conduct

reasonable inspections to discover dangerous conditions existing on the premises." *Pigg*, 991 So. 2d at 1199–1200 (quoting *Gaines v. K–Mart Corp.*, 860 So. 2d 1214, 1216 (¶5) (Miss. 2003)). The breach of either duty supports a claim of negligence. *Id*. at 1200; *Mayfield v. The Hairbender*, 903 So. 2d 733, 738 (¶20) (Miss. 2005).

*Summary Judgment Discussion and Analysis*

As stated above, both Defendants have moved separately for summary judgment. Stanley's argument turns on the issue of duty, while DeSoto Inns' turns on causation. Bearing in mind the admissibility determinations made above, each Defendant's arguments are addressed here in succession.

### 1. *Stanley Access Technologies*

Stanley argues that summary judgment in their favor is warranted because they did not owe Plaintiff any duty. Stanley's sole argument in support of their motion is that Plaintiff cannot prove that Stanley owed her a duty without the testimony of her expert witness Warren Davis, which, as discussed above, Stanley believes should be excluded.

Because the Court finds above that the complete exclusion of Davis' report and testimony is not warranted at this time, Stanley's argument for summary judgment is not well taken. The report and testimony of Stanley's own expert, David Sitter directly rebuts substantial portions of Davis' report, especially concerning any duty Stanley may have owed to Plaintiff.

Because underlying factual disputes exist that prevent the Court from reaching the legal question of whether Stanley owed a duty to the Plaintiff, and factual controversies are to be resolved in favor of the non-movant "when . . . both parties have submitted evidence of contradictory facts," summary judgment in Stanley's favor is not warranted. *Little*, 37 F.3d at 1075.

## 2. *DeSoto Inns*

DeSoto Inns argues that summary judgment in their favor is warranted because the Plaintiff has failed to produce any evidence that a dangerous condition existed. Further DeSoto Inns argues that even if a dangerous condition did exist, Plaintiff cannot prove that daily inspections would have been prevented her injuries. In essence, DeSoto Inns argues that even if the Plaintiff can show that the doors were the actual cause of her injuries, she has not carried her burden in demonstrating that DeSoto Inn's failure to inspect was the proximate cause. The Plaintiff counters that properly conducted daily inspections would have uncovered the defect or malfunction in the doors, thus preventing her injuries.

The Mississippi Supreme Court has articulated one limitation to a premises owner's liability for failure to conduct reasonable inspections. In *Jones v. Imperial Palace,* that Court held: "[t]here is no liability, however, for harm resulting from conditions from which no unreasonable risk was to be anticipated, or those which the occupier did not know and could not have discovered with reasonable care." *Jones v. Imperial Palace of Miss., LLC*, 147 So. 3d 318, 319-20 (¶14) (Miss. 2014) (citing *Moore v. Winn-Dixie Stores, Inc.*, 173 So. 3d 603, 605 (Miss. 1965)). In *Cox v. Wal-Mart*, the Fifth Circuit applied this doctrine in the specific context of failure to perform daily inspections on automatic doors. *See Cox*, 755 F.3d at 235. In that case, the Court held that the fact that a premises owner failed to perform daily inspections on automatic doors was not, "standing alone, sufficient to impute liability," but it did "bear on whether [the owner] maintained its premises in a reasonably safe condition, and whether [the owner] should have known and warned of any defect." *Id.* at 235; (citing *Pigg*, 991 So. 2d at 1199). The Fifth Circuit further instructed, "these questions are for the jury." *Id.*

The issues in this case clearly fall within the parameters articulated in *Cox*. There is conflicting testimony in the record about the circumstances of the incident, and the existence of a defect or malfunction. Additionally, the expert witnesses disagree over whether properly performed daily inspections would have uncovered any defect, who should have performed inspections, and when. Because there are genuine issues of material fact as to whether DeSoto Inns' failed to maintain and inspect the doors, and whether properly conducted daily inspections would have prevented the Plaintiff's injuries, summary judgment in favor of DeSoto Inns is not warranted.

*3. Res Ipsa Loquitur*

*Res ipsa loquitur* raises a rebuttable presumption of negligence when a plaintiff demonstrates:

> 1) the instrumentality causing the damage was under the exclusive control of the defendant,
> 2) the occurrence was such that in the ordinary course of things it would not have happened if those in control of the instrumentality used proper care, and
> 3) the occurrence was not due to any voluntary act on the part of the plaintiff.

*Huynh v. Phillips*, 95 So. 3d 1259, 1262 (¶ 7) (Miss. 2012). The requirement of "exclusive control" of the damaging instrumentality "does not limit *res ipsa loquitur* to a single defendant; the doctrine may be applicable where authority is shared concerning the instrumentality in question." *Coleman v. Rice*, 706 So. 2d 696, 698 (¶ 10) (Miss. 1997). The record in this case demonstrates that the facts pertaining to each prong of the *res ipsa loquitur* inquiry are clearly in dispute relative to both Defendants. When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves*, 530 U.S. at 150, 120 S. Ct.

2097. For this reason, summary judgment on *res ipsa loquitur* is not warranted as to either Defendant.

*Conclusion*

In conclusion, the Court finds as follows:

The Report and Recommendations [140] of the United States Magistrate Judge dated September 9, 2015, are hereby approved and adopted as the opinion of the Court. Defendant Stanley Access Technologies, Inc.'s motion to strike Plaintiff's untimely supplemental expert report [101] is GRANTED, and the supplemental expert report of Dr. Warren Davis is hereby stricken.

DeSoto Inns' Motion to Strike [142] is GRANTED, and the supplemental affidavits of Warren Davis [138-1, 139-1] are hereby stricken.

Defendant DeSoto Inns' motion to exclude the expert testimony of Warren Davis [99] is GRANTED in part and DENIED in part. Davis' testimony is excluded to the extent it provides a definitive legal conclusion about causation and the definitive causal link between DeSoto Inns' alleged failure to perform daily inspection and the Plaintiff's injuries.

Defendant Stanley's motion to exclude the expert testimony of Warren Davis [106] is GRANTED in part and DENIED in part. Davis' testimony is excluded to the extent that it provides a definitive legal conclusion about Stanley's duty to the Plaintiff.

Defendant DeSoto Inns' motion to exclude the expert testimony of David Sitter [97] is GRANTED in part and DENIED in part. Sitter's testimony is excluded to the extent it provides a conclusion to the jury about causation and the definitive causal link between DeSoto Inns' alleged failure to perform daily inspection and the Plaintiff's injuries.

Defendant Stanley's motion to exclude the expert testimony of Michael Panish [108] is GRANTED in part and DENIED in part. As outlined above, Panish's first three opinions are excluded, and Panish's fourth opinion is admitted.

Defendant Desoto Inns' Motion for summary judgment [95] is DENIED.

Defendant Stanley Access Technologies Inc.'s Motion for summary judgment [110] is DENIED.

**SO ORDERED on this, the 6th day of November, 2015.**


/s/  **Sharion Aycock**_____
**UNITED STATES DISTRICT JUDGE**